UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HABITAT FOR HUMANITY
INTERNATIONAL, INC.,

    Plaintiff,

v.                                       Case No. 2:19-cv-456-JLB-MRM

ROBERT DERRICK MORRIS,

    Defendant.

## ORDER

Defendant Robert Derrick Morris is a former employee of Plaintiff Habitat for Humanity International, Inc. ("Habitat"). His employment was terminated after Habitat allegedly discovered irregularities in his reimbursement requests. As part of the termination, Habitat and Mr. Morris executed a severance contract under which Mr. Morris received payment in exchange for a covenant not to sue and agreeing to comply with a non-disparagement clause. After Habitat initiated this action against Mr. Morris for fraud and breach of fiduciary duty, he filed counterclaims for employment discrimination based on race, sex, and age. He also made comments to local media about Habitat's purported discrimination.

Habitat responded by adding two claims for breach of contract (Counts V and VI) based on Mr. Morris's violation of the covenant not to sue and the non-disparagement clause in the severance contract. Habitat now moves for partial summary judgment on those claims. (Doc. 88.) After carefully reviewing the parties' arguments, the Court grants Habitat's motion in part. It is clear that Mr.

Morris's activity violated the severance contract, and that Habitat is entitled—at a minimum—to restitution of its severance payment. But Habitat's request for attorney's fees and costs will be deferred to a later stage of this litigation, and the Court is not yet certain whether Habitat is entitled to reputation damages for Mr. Morris's alleged violation of the severance agreement's non-disparagement clause. In those respects, Habitat's motion for partial summary judgment will be denied.

### BACKGROUND

**I.   Mr. Morris leaves Habitat and executes a severance agreement that contains a general release, a covenant not to sue, and a non-disparagement clause.**

Although Habitat's motion for partial summary judgment is limited to its breach-of-contract claims, some discussion of the parties' overarching dispute is helpful to understand the facts. Mr. Morris was employed by Habitat from 2002 through 2005, and again from 2010 through 2017. (Doc. 88 at 2–3, ¶ 4; Doc. 91 at 3, ¶ 4.) His last role with Habitat was "Director of Construction Technology and Safety," which he performed remotely from his home in Estero, Florida. (Doc. 88 at 2–3, ¶ 4; Doc. 88-1 at 17.) As part of the job, Habitat allowed Mr. Morris to submit reimbursement requests for certain work-related expenses. (Doc. 71 at 6 ¶ 19.)

Habitat alleges that in 2017 a new supervisor questioned Mr. Morris for requesting inappropriate reimbursements in his expense report. (Id. at 6, ¶ 20.) This questioning, according to Habitat, led Mr. Morris to ask that he be laid off. (Id. at 7, ¶ 23.) Mr. Morris admits only that he requested to be laid off, not that he requested inappropriate reimbursements. (Doc. 88 at 3, ¶ 5; Doc. 91 at 3, ¶ 5.)

In any case, Habitat honored his request. On August 7, 2017, the parties executed a severance contract, under which Mr. Morris received a severance payment of $16,830—reduced to $14,960 after "appropriate deductions and withholdings." (Doc. 88 at 3, ¶ 6; Doc. 91 at 3, ¶ 6.) The contract specifically provides that Mr. Morris's severance payment "exceed[ed] the payments and benefits to which [he] would otherwise [have been] entitled," and that the payments and benefits were "specific and sufficient consideration for the releases and covenants" contained elsewhere in the agreement. (Doc. 88-1 at 10, ¶ 6.) For purposes of this order, three of these "releases and covenants" are significant.

First, paragraph 8 contains a broad release of any claims Mr. Morris may have against Habitat, including "claims pursuant to federal, state, or local law regarding discrimination based on . . . age, race, [and] sex." (Id. at 11, ¶ 8.)

Next, paragraph 9 contains a covenant not to sue for any of the various claims mentioned in paragraph 8. It provides, in relevant part:

> [Y]ou promise to the fullest extent permitted by applicable law, you will not sue or initiate any action or other proceeding asserting any such claim or proceeding [in paragraph 8], individually or as a member of a class . . . . You further agree that if you breach this promise, you shall <u>in addition to all other remedies provided hereunder or otherwise</u>, pay as damages all costs incurred by any party in defending such action or proceeding, including their reasonable attorneys' fees.

(Id. at ¶ 9) (emphasis added.)

And finally, paragraph 10 contains a non-disparagement clause, which provides, in its entirety:

> You agree that you will not make, directly or indirectly, <u>any adverse or disparaging oral or written statements</u> (including social media) regarding [Habitat] or its affiliates, national organizations, partners,

3

> associated entities, successors, assigns, agents, executives, directors, officers or current or former employees of any of them, whether to any donor or prospective donor of [Habitat], <u>the press or any other media</u>, and other business entity or third party, or any current or former director, officer or employee of [Habitat]. You agree that you will do nothing to <u>impair [Habitat's] reputation or good will</u> among its donors, potential donors, vendors, supplies, the Habitat for Humanity community, other third parties, or the public.

(<u>Id.</u> at 12, ¶ 10) (emphasis added).

## II. Mr. Morris leaves Habitat and executes a severance agreement that contains a general release, a covenant not to sue, and a non-disparagement clause.

After Mr. Morris's employment ended, his former supervisor took a closer look at his history of expenses and allegedly uncovered: (a) additional improper use of Habitat's resources, (b) reimbursements that did not have documentary support or were otherwise noncompliant with Habitat's policies, (c) significant mileage on Mr. Morris's company car for personal trips, and (d) unreported vacation time. (Doc. 71 at 10–14, ¶¶ 30–44.) Based on these purported discoveries, Habitat sued Mr. Morris in Georgia state court, alleging claims that sounded in fraud and breach of fiduciary duty. (Doc. 1-1 at 3–21.) Mr. Morris (who disputes these allegations) removed the action to the U.S. District Court for the Northern District of Georgia, which eventually transferred the action to this Court. (Docs. 1, 7, 10.)

On August 16, 2019, Mr. Morris filed his answer to Habitat's post-transfer amended complaint. (Doc. 34.) His answer included multiple counterclaims for race, sex, and age discrimination. (<u>Id.</u> at 9–14.) About a month later, The News-Press (a local newspaper in Fort Myers, Florida) published an article titled, "Estero

4

man claims race, age bias against Habitat for Humanity International." (Doc. 88-1 at 15–19.) In the article, Mr. Morris is quoted as saying:

> I believe that I was being passed over for promotion, passed over for opportunities for growth because I was an experienced, white, conservative male. . . . As a white male, I was treated different because I was in a different class — I was not a woman, I was not a person of color, I was not a person of a particular political group or gender identity.
>
> . . .
>
> There were several senior director roles being put in place and I was told I was not going to be considered. . . . It had been my experience and my observation over the course of that seven-year period when I was at Habitat for that second term that white males, especially conservative males like myself . . . were being passed over.

(Doc. 88-1 at 18–19.) The Court initially dismissed Mr. Morris's counterclaims without prejudice for failing to state a claim and provided him with an opportunity to replead. (Doc. 57.) On November 8, 2019, Habitat filed a third amended complaint which included—for the first time—two additional counts for breach of contract. (Doc. 58.) Both counts related to Mr. Morris's severance contract. Count V alleged that Mr. Morris had breached his covenant not to sue by bringing his counterclaims for race, sex, and age discrimination. (Id. at 27–29, ¶¶ 92–100.) Count VI alleged that Mr. Morris also breached the contract's non-disparagement clause through his statements to The News-Press. (Id. at 29–31, ¶¶ 101–08.)

Despite Habitat's new breach-of-contract claims, Mr. Morris re-filed his counterclaims without any significant revision. (Doc. 73.) Habitat moved to dismiss the counterclaims once again, but the Court sua sponte dismissed Habitat's third amended complaint as a shotgun pleading, thus mooting Habitat's motion. (Docs. 66, 70.) Habitat filed its operative complaint on January 16, 2020, and Mr. Morris

again filed his counterclaims.  (Docs. 71, 73.)  Once more, Habitat moved to dismiss the counterclaims with prejudice.  (Doc. 74.)  The Court granted Habitat's motion in part, dismissing the counterclaims without prejudice for failing to state a claim and directing Mr. Morris to file amended counterclaims no later than April 20, 2020.  (Doc. 76.)  The Court also warned Mr. Morris that failure to file amended counterclaims by the deadline would result in dismissal with prejudice.  (Id.)  After Mr. Morris missed the deadline, the Court made good on its warning—it dismissed the counterclaims with prejudice and entered judgment on them.  (Docs. 77, 78.)

Habitat now moves for partial summary judgment on Counts V and VI, its breach-of-contract claims.  (Doc. 88.)  Mr. Morris opposes the motion.  (Doc. 91.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Id.

**DISCUSSION**

I. **Habitat has established the existence of a valid contract, breach of that contract, and at least some damages caused by the breach under Counts V and VI.**

"In order to prove a breach of contract claim under Georgia law, a plaintiff must demonstrate: (1) a valid contract, (2) breach of that contract, and (3) damages caused by the breach."[1] Hollingsworth v. Liberty Mut. Ins. Co., 808 F. App'x 942, 945 (11th Cir. 2020) (citing Bartholomew v. AGL Res., Inc., 361 F.3d 1333, 1339 (11th Cir. 2004)). "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." Ga. Code Ann. § 13-3-1. There is no dispute that the parties' severance agreement is a valid contract, created with the parties' mutual assent and supported by valid consideration. (Doc. 88 at 4, ¶ 8; Doc. 91 at 3, ¶ 8.) Mr. Morris also makes no effort to dispute Habitat's argument that his conduct breached both the covenant not to sue and the non-disparagement clause. (Doc. 88 at 15–16, 18.)

---

[1] According to its choice-of-law provision, the contract is governed by Georgia law. (Doc. 88-1 at 13, ¶ 22.) Neither party resolves whether Florida or Georgia law governs this case; Habitat asserts that it would prevail under either Florida or Georgia law, and Mr. Morris vacillates between the two when it suits his argument. (Doc. 88 at 13, n.8; Doc. 91 at 6, 9 n.3.) Both states, however, enforce choice-of-law clauses. See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 311 (Fla. 2000) ("Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."); Carr v. Kupfer, 296 S.E.2d 560, 562 (Ga. 1982) ("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause."). Therefore, the Court is obligated to apply Georgia law based on the severance contract's choice-of-law clause. Travelers Prop. Cas. Co. of Am. v. Moore, 763 F.3d 1265, 1270 (11th Cir. 2014) ("A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state . . . .").

Instead, he claims that Habitat is not entitled to summary judgment on Counts V and VI because it has not established any damages caused by the breach.  Given the undisputed facts of the case, the Court finds that a valid contract exists, and that Mr. Morris has breached the covenant not to sue and the non-disparagement clause within the contract.[2]

Habitat argues that, as a matter of law, it is entitled to three forms of damages on its breach-of-contract claims against Mr. Morris: (1) restitution of its severance payment for both Counts V and VI; (2) reasonable attorney's fees and costs for Count V; and (3) reputational damages for Count VI.  (Doc. 88 at 16–17, 21.)  The Court agrees with Mr. Morris as to Habitat's latter two requests.  Habitat is, however, entitled to partial summary judgment as to its restitution remedy.

### A.     Restitution of the severance payment (Counts V and VI).

Georgia law permits restitution damages as a remedy for breach of contract.  <u>PMS Const. Co. v. DeKalb Cnty.</u>, 257 S.E.2d 285, 288 (Ga. 1979).  The object of restitution "is to return the injured party to the position he occupied [b]efore his performance, i.e. to restore him to the pre-contract status quo."  <u>Id.</u>  A party entitled to restitution may recover "the reasonable value of materials furnished and services rendered, measured as of the time of performance."  <u>Id.</u>

Here, the parties agree that Habitat furnished Mr. Morris with a severance payment of $14,960—a payment that was explicitly intended to serve as "specific

---

[2] To the extent some of Mr. Morris's tertiary arguments are directed to the element of breach, they are discussed in more detail below.

and sufficient consideration for the releases and covenants" contained in the severance contract.  (Doc. 88-1 at 10, ¶ 6.)  Habitat now requests restitution of that payment as a remedy for Mr. Morris's breach of the covenant not to sue and the non-disparagement clause in the contract.  It is entirely inaccurate for Mr. Morris to claim that Habitat's motion is "completely devoid of any actual facts related to the type, amount, and or nature of the damages Habitat claims are recoverable under Counts VI and VI."  (Doc. 91 at 7.)  On the contrary, Habitat is requesting restitution of a very specific dollar amount: $14,960.  Mr. Morris admits that he received this amount.  (Doc. 88 at 4, ¶ 8; Doc. 91 at 3, ¶ 8.)  Awarding Habitat $14,960 would restore it to its pre-contract position.  As a consequence, Mr. Morris's demand for additional specificity fails—at least as to the restitution remedy.

### B.   Attorney's fees and costs (Count V).

Georgia law normally treats restitution as an "alternative remedy" for breach of contract.  PMS Const. Co., 257 S.E.2d at 287.  In this case, however, the covenant not to sue provides that Habitat is entitled to reasonable attorney's fees and costs "in addition to all other remedies provided hereunder or otherwise."  (Doc. 88-1 at 11, ¶ 9.)  Accordingly, in addition to restitution of the severance payment, Habitat seeks recovery of the attorney's fees and costs that it incurred to defend against Mr. Morris's counterclaims.  Habitat intends to establish the specific amount of its fees and costs by separate motion under Local Rule 7.01.  (Doc. 88 at 17.)  Mr. Morris correctly asserts that Habitat has not provided "a single fee ledger, invoice, tax record or fundraising audit" to support its request for fees and costs.  (Doc. 91 at 7.)

But that is only because Habitat intends to establish its fees by separate motion. In a similar situation, this Court denied a plaintiff's request for summary judgment on attorney's fees and costs without prejudice, while allowing the plaintiff to file an appropriate motion after entry of judgment. See Country Inns & Suites By Carlson, Inc. v. Interstate Props., LLC, No. 6:07-cv-104-Orl-28DA, 2008 WL 2782683, at *7 (M.D. Fla. July 16, 2008), aff'd, 329 F. App'x 220 (11th Cir. 2009). This approach seems equally sound here. Accordingly, the Court will deny Habitat's motion for summary judgment as to fees and costs, without prejudice to Habitat filing a post-judgment motion for the same remedy (if appropriate).

    **C.**    **Reputation damages (Count VI).**

Finally, Habitat requests reputation damages for Mr. Morris's breach of the severance contract's non-disparagement clause. Reputational damages are generally not recoverable in breach-of-contract claims because they are a form of consequential damages, which must be reasonably contemplated by the parties and proven with reasonable certainty beyond mere speculation. See Klayman v. Jud. Watch, Inc., 255 F. Supp. 3d 161, 168 (D.D.C. 2017) (collecting cases). In Georgia, consequential damages "are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation . . . and are independent of any collateral enterprise entered into in contemplation of the contract." Ga. Code Ann. § 13-6-8. Where evidence of reputational damage resulting from breach of a non-disparagement clause is lacking, Georgia law permits a partial summary judgment solely on the question of breach. Eichelkraut

10

v. Camp, 513 S.E.2d 267, 269–70 (Ga. Ct. App. 1999) (affirming partial summary judgment as to breach).

Habitat's sole evidence of reputation damages is a declaration by Joseph Albert Early III, a Habitat employee who was working as senior director of human resources at the time of Mr. Morris's termination. (Doc. 88-1.) Mr. Morris avers that purportedly false statements, like the ones Mr. Morris made to The News-Press, "damage Habitat's reputation in the community and, in particular, among its donors, upon whom Habitat depends on for much of its funding." (Id. at 6, ¶ 15.) Mr. Morris responds that Habitat has no evidence "to identify . . . the nature of any fundraising deficit or loss of good will among Habitat's donors." (Doc. 91 at 7.) In fact, he submits Habitat's consolidated financial statements from 2019 and 2020, which he claims show a "year-over-year increase" in contributions. (Id.)

Even if the Court accepts that the existence of the non-disparagement clause means the parties contemplated reputational damages, Habitat has not proven reputational damages with reasonable certainty. Klayman, 255 F. Supp. 3d at 169–71. Besides Mr. Early's conclusory declaration, the Court has no way to calculate whatever monetary damages Habitat may have sustained due to Mr. Morris's public comments. See Ga. Code Ann. § 13-6-8. Consistent with Eichelkraut, the Court believes that Mr. Morris's statements about Habitat violating multiple antidiscrimination statutes by firing him breached the non-disparagement clause of the severance agreement. 513 S.E.2d at 270 (finding that letters sent by a defendant were "disparaging" on their face, as that term would be commonly

11

understood). The breach entitles Habitat, at a minimum, to restitution of the severance payment. But the Court is not prepared to award reputation damages absent evidence that rises above mere speculation. Moreover, the Court is not certain whether awarding both restitution and reputation damages in this case would amount to an impermissible double recovery. See PMS Const. Co., 257 S.E.2d at 287 (describing restitution as an alternative remedy). The Court's decision is without prejudice to Habitat providing adequate proof of reputation damages and demonstrating that an award of such damages, on top of restitution, would not result in an impermissible windfall.

## II. Mr. Morris's counterclaims and public statements are not protected by litigation privilege or the First Amendment.

Beyond damages, Mr. Morris argues that summary judgment should be denied on Counts V and VI as to liability because his counterclaims and public statements are protected by Florida's litigation privilege and the First Amendment's right to petition for redress of grievances. (Doc. 91 at 8–10.) Neither argument is convincing.

To begin, it is not clear why Mr. Morris believes that Florida's litigation privilege, as opposed to Georgia's, should govern this case.[3] But even under Florida

---

[3] As explained earlier, both parties seem to honor the severance agreement's choice-of-law provision, under which Georgia law controls. See supra note 1. In a footnote to his opposition brief, Mr. Morris claims that Florida's litigation privilege nevertheless applies because "the alleged misconduct giving rise to [Counts V and VI] . . . were actions taken in Florida and pursuant to Federal Law. (Doc. 91 at 9, n.3.) This explanation is not satisfying, but Habitat does not challenge it. But even if Florida law controls on the question of litigation privilege, Mr. Morris's argument would fail. And Georgia's statutory litigation privilege only applies to libel claims, not contractual claims. Ga. Code Ann. § 51-5-8; Morrison v. Morrison, 663 S.E.2d

12

law, the Court rejects Mr. Morris's argument. On its face, Florida's litigation privilege broadly applies to "any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994). But the Florida Supreme Court has cautioned that the litigation privilege cannot be applied in a way that would "eviscerate [a] long-established cause of action." Debrincat v. Fischer, 217 So. 3d 68, 70 (Fla. 2017). Accordingly, when analyzing the applicability of Florida's litigation privilege to a contractual claim based on an insurance policy's "incontestability clause," the Eleventh Circuit reasoned that no Florida authority "extend[s] absolute immunity to the filing of a lawsuit where that specific act breaches a contract." Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1219 (11th Cir. 2018). The parties have not provided (and the Court has not found) any authority to contradict the Eleventh Circuit. Here, both of Habitat's counterclaims are premised on a breach of contract, and therefore Florida's litigation privilege does not apply.

---

714, 717 (Ga. 2008) ("OCGA § 51–5–8, which provides an absolute privilege for certain statements made during the course of judicial proceedings, explicitly applies only to libel claims."), disapproved of on other grounds by Gilliam v. State, 860 S.E.2d 543, 544 (Ga. 2021).

13

The same is true of Mr. Morris's constitutional arguments.[4] The Petition Clause of the First Amendment protects a person's right to receive redress from courts. See U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). Yet federal courts have held that a contractual restraint on litigation between private parties does not violate the Petition Clause. See, e.g., Microsoft Corp. v. Motorola, Inc., 795 F.3d 1024, 1048 (9th Cir. 2015) (holding that the Noerr-Pennington doctrine, which is a corollary of the Petition Clause, does not immunize parties against breach-of-contract claims); Powertech Tech., Inc. v. Tessera, Inc., 872 F. Supp. 2d 924, 931 (N.D. Cal. 2012) (same); Apple, Inc. v. Motorola Mobility, Inc., 886 F. Supp. 2d 1061, 1078 (W.D. Wis. 2012) (same).

### III. The non-disparagement clause of the severance contract does not violate public policy.

Mr. Morris next argues that Habitat's non-disparagement clause is unenforceable because it is against Georgia's public policy. (Doc. 91 at 10.) None of the authority cited by Mr. Morris is persuasive.

Georgia provides a statutory, non-exhaustive list of contracts that are void against public policy. Ga. Code Ann., § 13-8-2(a)(1)–(5). None of the grounds set

---

[4] In addition to the Constitution of the United States, Mr. Morris also relies on article 1, section 21 of the Florida Constitution, which reads, "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay." Again, it is not clear why the Florida Constitution, as opposed to the Georgia Constitution, should apply. See supra notes 1 and 3. But even on Mr. Morris's own terms, his argument fails. See Shay v. First Fed. of Miami, Inc., 429 So. 2d 64, 67 (Fla. 3d DCA 1983) ("The restrictions placed on appellants' access to the courts were of their own agreement and were not the result of legislative or judicial action.").

14

forth in the statute apply to this case. And while the statutory list is explicitly not exhaustive, the Georgia Supreme Court warns that "courts must exercise extreme caution in declaring a contract void as against public policy and should do so 'only in cases free from doubt.'" Emory Univ. v. Porubiansky, 282 S.E.2d 903, 904–05 (Ga. 1981) (quoting Equitable Loan & Sec. Co. v. Waring, 44 S.E. 320, 343 (Ga. 1903)).

The cases cited by Mr. Morris do not dispel this Court's doubt. In the first case, a Georgia appellate court held that a confidential settlement agreement cannot "operate to preclude discovery by Georgia litigants of the parties to that confidential settlement agreement." Barger v. Garden Way, Inc., 499 S.E.2d 737, 741 (Ga. Ct. App. 1998), superseded by statute on other grounds, Johns v. Suzuki Motor of Am., Inc., 850 S.E.2d 59, 63 n.5 (Ga. 2020). The court construed the contract to have an "implicit term" allowing the parties to comply with subpoenas and court orders and reasoned that "[s]uch an interpretation gives full effect to the legitimate purposes of any confidential settlement agreement without running afoul of the public policies of Georgia." Id.

In the second case, a Georgia appellate court used the same logic to reverse the trial court's ruling that a party "breached [a] settlement agreement by cooperating with the police and the fraud investigators." Camp v. Eichelkraut, 539 S.E.2d 588, 598 (Ga. Ct. App. 2000). Once again, the court held that "permission to cooperate with investigative authorities" was "an implied term" of the contract, and that such an interpretation "gives full effect to the legitimate purposes of the [contract's] non-disparagement provision and the confidentiality provision." Id.

15

Here, Mr. Morris does not allege (and the record evidence does not show) that the non-disparagement clause in the severance contract prevented him from complying with a discovery order or cooperate with law enforcement. On the contrary, he did exactly what the non-disparagement clause prohibits—he made disparaging statements about Habitat to news media. Thus, neither of the cases he relies on are factually analogous. And both cases acknowledge that there are legitimate purposes to confidentiality and non-disparagement provisions; they are not contrary to public policy per se. Accordingly, Mr. Morris cannot meet the high threshold of certainty in Porubiansky.

## IV. The non-disparagement clause of the severance contract does not violate public policy.

In the last paragraph of his opposition, Mr. Morris raises several arguments without much elaboration. He initially argues that Mr. Early's opinion as set forth in his declaration about Mr. Morris's newspaper comments being disparaging should be stricken. (Doc. 91 at 11.) But the legal basis for Mr. Morris's request is difficult to discern. First, he states that "[o]pinion testimony is not admissible unless it meets all three prongs of" Federal Rule of Evidence 701. (Id.) He then pivots and argues that Mr. Early "was not disclosed as an expert witness in this case" and therefore his opinion "should be stricken from the record." (Id.) It is unclear whether Mr. Morris believes that opining on the disparaging nature of his remarks constitutes expert testimony or not. In any case, the answer to this question is not important because Mr. Morris's remarks are disparaging on their face. Accusing someone of violating multiple federal antidiscrimination statutes

16

would obviously result in a "diminution of esteem" or otherwise "detract" and "discredit" that person. Eichelkraut, 513 S.E.2d at 269 (relying on dictionary definitions of the term "disparagement").

At the end of his opposition brief, Mr. Morris states that Habitat "did not make any statement to the media regarding any fact that was not already publicly available on the docket." (Doc. 91 at 11.) But Mr. Morris stops short of explaining what legal effect his counterclaims had on the enforceability of the non-disparagement clause. If his remarks about Habitat were limited to the four corners of his court filings, then perhaps he would have a stronger argument for application of the litigation privilege or a public policy exception. See supra note 3; Barger, 499 S.E.2d at 741; Camp, 539 S.E.2d at 598. But making a statement that is privileged or otherwise protected in pleading form does not necessarily shield a party from the consequences of making the same statements to a newspaper. Accordingly, the Court rejects Mr. Morris's last-ditch arguments.

## CONCLUSION

For the reasons above, it is **ORDERED**:

1. Habitat's motion for partial summary judgment on Counts V and VI (Doc. 88) is **GRANTED IN PART** and **DENIED IN PART.**

2. The motion is granted to the extent that Mr. Morris breached the covenant not to sue and the non-disparagement clause of the severance agreement as a matter of law. Entry of summary judgment in Habitat's favor as to liability on Counts V and VI is warranted, and

>   Habitat is entitled—at a minimum—to restitution of its severance payment to Mr. Morris.

3. In all other respects, the motion is **DENIED**.

**ORDERED** in Fort Myers, Florida, on October 26, 2021.

*[signature]*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

18